**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JACKIE ROYAL AND CATHERINE ROYAL** | **CIVIL ACTION** |
| **VERSUS** | |
| **INGRAM BARGE COMPANY VESSEL #517110, ET AL** | **NO. 09-274-M2** <br> **CONSENT CASE** |

## RULING & ORDER

This matter is before the Court on the motions for summary judgment (R. Docs. 43 and 44) filed by defendants, Ingram Barge Company ("Ingram"), Delaware Marine Services, Inc. ("Delaware"), and Deloach Marine Services, LLC ("Deloach")(collectively "defendants"). Plaintiffs, Jackie and Catherine Royal (collectively "plaintiffs"), do not oppose the summary judgment motions of Ingram and Delaware; they have, however, filed an opposition to Deloach's motion. (R. Docs. 45 and 46), in response to which Deloach has filed a reply memorandum. (R. Doc. 50).

## FACTS & PROCEDURAL BACKGROUND

This suit arises from personal injuries allegedly sustained by plaintiff, Jackie Royal ("Mr. Royal"), on February 28, 2008, when he was descending a stairwell at his place of employment, Pelican Shipyard & Machine Shop, Inc. ("Pelican" or "Pelican Shipyards"). The plaintiffs allege that Mr. Royal lost his footing while carrying a pump down a stairwell,[1]

---

[1] The pump that Mr. Royal was carrying at the time of the accident was approximately a two and a half (2.5) foot by two and a half (2/5) foot, 25-30 pound pump. *See*, Affidavit of Leonard David Landry, Exhibit E to Delaware and Deloach's motion. The stairwell he was descending was a portable stairwell (with a handrail on one side farthest from the vessel), which Pelican places alongside a vessel for use by employees boarding and disembarking the vessel while it is being serviced. *Id.*

1

which stairwell was owned by Pelican and used to board and disembark vessels at the shipyard while the vessels are undergoing repairs.  The vessel upon which Mr. Royal was working at the time of the accident was the M/V TREY DELOACH, a tugboat owed by Ingram and chartered by Deloach and Delaware.  Mr. Royal contends that he lost his footing because he stepped on barnacles that had been scraped from the side of the M/V TREY DELOACH and left on the stairwell.  According to the plaintiffs, when Mr. Royal stumbled, the pump he was carrying shifted in his hands and smashed his right hand between the pump and the hand rail, injuring his right hand.

Plaintiffs originally filed suit against Ingram in the 18th Judicial District Court, Parish of Iberville, State of Louisiana, on March 5, 2009, on the basis that Ingram employed the deckhand who allegedly scraped barnacles from the side of the M/V TREY DELOACH and negligently left them on the stairs.  Ingram subsequently removed the case to this Court on May 6, 2009.  On March 30, 2010, plaintiffs amended their complaint and named Delaware as a defendant because they "learned since institution of this suit that defendant, Delaware Marine Services, Inc., was cleaning the barnacles off of the boat at the time of [the] incident . . ."  *See*, R. Doc. 16.  On June 22, 2010, plaintiffs were notified by counsel for Deloach that the employee that scraped the barnacles was not an employee of Delaware but was instead an employee of Deloach.  Plaintiffs therefore filed another amended complaint, naming Deloach as a defendant, on September 7, 2010.  *See*, R. Doc. 28.

Defendants have now filed motions for summary judgment, seeking dismissal from this suit with prejudice.  Since plaintiffs have filed responses indicating that they have no opposition to the summary judgment motions of Ingram and Delaware, plaintiffs' claims against those entities will be dismissed without further discussion.  In Deloach's motion,

which plaintiffs oppose, Deloach contends that it should be dismissed because, although it brought an Ingram vessel to the Pelican Shipyard for service and repair and Mr. Royal boarded that vessel daily using a portable metal stairwell owned and positioned by Pelican Shipyard in order to perform his work as a welder-fitter, Mr. Royal cannot produce any substantive evidence indicating that any Deloach employee caused or contributed to an unreasonably dangerous condition that resulted in his alleged injuries, particularly the presence of any barnacles upon the stairwell.

## **LAW & ANALYSIS**

**I.     Summary judgment standard:**

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[2] Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on

---

[2] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

personal knowledge that demonstrates the existence of a material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law. *Id.*

**II.    Deloach's motion:**

Deloach has presented evidence demonstrating the following undisputed facts. At the time of the incident in question, the M/V TREY DELOACH was owned by Ingram, and Deloach provided a crew and operated the vessel for Ingram. The crew included the pilot, Cody Lafitte ("Lafitte"), and a deckhand, Allen Murphy ("Murphy"). *See*, Exhibit A to Deloach motion. On February 25, 2008, the M/V TREY DELOACH was dry-docked at the Pelican Shipyard facility in Plaquemine, Louisiana, while Pelican performed various maintenance and repair services on the vessel from February 25-29, 2008. *See*, Invoices attached to Exhibit A to Deloach motion. Prior to reaching Pelican Shipyard, the vessel had stopped at A to Z Shipyard in Port Allen, Louisiana, where Lafitte disembarked and instructed Murphy to conduct certain "stacking" activities on the vessel once it reached Pelican Shipyard. Before Murphy was able to conduct those activities, however, he scraped barnacles off the hull of the M/V TREY DELOACH, allegedly at the instruction of an Ingram supervisor.[3] *See*, Affidavit of Cody Lafitte, Exhibit B to Deloach motion.

According to the affidavit of Lafitte, Murphy had concluded all barnacle-scraping activity and had resumed his work activities for Deloach at least a day before Mr. Royal's

---

[3] Deloach contends that Murphy conducted such barnacle-scraping activity at the instruction of an Ingram supervisor. According to Deloach, Murphy assumed Deloach worked for Ingram and that Ingram therefore had the authority to direct his activities. Ingram has denied in discovery that it had any supervisory personnel at the site who would have given Murphy such an order. Such dispute does not, however, affect the outcome of this motion.

accident. Lafitte walked up and down the stairwell in question on several occasions on the day of the accident, both before and after the accident occurred, and there were no barnacles on the stairwell at any time during the M/V TREY DELOACH's dry-docking at Pelican Shipyard. *Id.* Lafitte also never saw (and has no knowledge of) anyone cleaning any barnacles off the stairwell before or after Mr. Royal's accident. *Id.*

The Rule 30(b)(6) deposition testimony of Pelican Shipyard's President, Richard Businelle ("Businelle"), also indicates that it was the responsibility of Pelican employees to be observant at all times for hazardous conditions on the premises and to either remedy any potentially dangerous conditions or bring same to the attention of a supervisor. *See*, Businelle deposition, Exhibit C to Deloach motion, pp. 15, 19-20, 23-25, 28, and 66-67.[4] Thus, if Mr. Royal had seen barnacles on the stairwell, he had a responsibility, as a Pelican Shipyard employee, either to clean them off or to advise a supervisor about the condition. *Id.* During his deposition, Mr. Royal admitted that, if he would have seen barnacles on the stairwell, he would have had a responsibility to clean them off; however, he conceded that he did not see any barnacles upon the subject stairwell at any time. *See*, Deposition of Mr. Royal dated December 20, 2010, Exhibit D to Deloach motion, pp. 56-57, 66-67, 72-78, 113-114.[5] Furthermore, no other Pelican Shipyard employee, or anyone else for that

---

[4] According to Pelican's president, "safety first" is "absolutely" a prime philosophy of Pelican, and the company spends a great deal of time "training [its] employees, including Mr. Royal, as to being safe and looking for unsafe conditions and either fixing them or telling somebody about them." *See*, Businelle deposition, p. 66.

[5] Mr. Royal's testimony as to when he last saw barnacle-scraping activities prior to his accident is inconsistent. Although, at one point during his deposition, he testified that, as he was going up the stairwell to get the pump on the day of his accident, he saw the deckhand scraping barnacles, Mr. Royal testified clearly, at several other points during his deposition, that there were no barnacle-scraping activities on the day of his accident and that the last time that he saw anyone scraping barnacles was on the morning of the day before his accident. *Id.*, at 60, 72-77, 113. He further testified that he observed the subject stairwell several times when he descended the stairwell at the end of the work day on the day

matter, reported that any barnacles or other substances were on the stairwell in question before or after Mr. Royal's accident. *See*, Affidavit of Landry, Exhibit E to Deloach motion.

Additionally, Businelle testified that he or his Yard Foreman, David Landry ("Landry"), or both of them, walked the grounds of the shipyard, including the stairwell area, at the end of each work day and/or the beginning of each work day to look for potentially hazardous conditions, like barnacles on the stairwell, and that he did not see any barnacles on the stairwell during such inspections at any time.[6] *See*, Businelle deposition, pp. 82-84. Businelle also testified that he is not aware of any action by Deloach or its employees that could have caused or contributed to Mr. Royal's accident. *Id.*, p. 89. Although Businelle saw a deckhand scraping barnacles off the M/V TREY DELOACH several days prior to the accident, he testified that such activity was being performed safely, with the barnacles being scraped onto the concrete and not onto the stairwell in question. *See*, Businelle deposition, pp. 85-86. Pelican's Yard Foreman and Mr. Royal's supervisor, Landry, confirmed Businelle's testimony in an affidavit, wherein Landry stated that he inspects all

---

before his accident and on the day of his accident, and he never saw any barnacles. *Id.*, at p. 73-78, 113-114. Although, early in his deposition, Royal stated in a conclusory fashion that, "on [his] way down the stair cage with the pump, that's when my foot hit some of the barnacles that the deckhand had been scraping off the side of the boat," he later testified that, as he was carrying the pump down the stairs at the time of his accident, he observed each stair as he descended the stairwell prior to stepping on each stair, and he saw no barnacles on any of the steps during his descent. *Id.*, p. 48, 130-131. Mr. Royal further conceded that he did not look to see if there were any barnacles (or other objects/substances) on the steps immediately following his accident; he was concerned with the injury to his hand and therefore went directly to the office bathroom to check his hand and then to inform his supervisor, before leaving the premises. *Id.*, at p. 104-111.

[6] In their opposition, plaintiffs contend that a genuine issue of material fact exists as to whether there were barnacles on the stairwell at the time of Mr. Royal's accident because Businelle testified that he had no reason to believe there were not barnacles on the stairs. *See*, Exhibit C, p. 96. Plaintiffs cannot, however, rest their case upon such testimony. In order to survive summary judgment, they must be able to come forward with some *positive* evidence demonstrating that someone actually saw barnacles on the steps in the time period before or after Mr. Royal's accident. Otherwise, their case is based upon mere speculation and inferences, which is impermissible to allow them to proceed beyond summary judgment to trial.

of the Pelican Shipyard premises, including stairwells, at the end and/or beginning of each work day looking for potentially hazardous conditions, which he either corrects or has someone else remedy. *See*, Landry affidavit, Exhibit E to Deloach motion. Landry specifically attested that he never saw any hazardous conditions on the stairwell in question, was never advised of any such conditions, and never cleaned up (or had anyone else clean up) any hazardous conditions, including barnacles on the stairwell, while the M/V TREY DELOACH was docked at Pelican Shipyard. *Id.*[7]

Considering the above evidence, which plaintiffs have failed to sufficiently refute with their opposition, it appears that the plaintiffs' allegation that Mr. Royal slipped on barnacles that were negligently left on the subject stairwell by a Deloach employee is based merely upon an unsupported assumption or speculation, which is impermissible to sustain their burden of proof at the summary judgment stage.[8] Plaintiffs have not presented any competent evidence whatsoever demonstrating that any barnacles were ever seen on the

---

[7] Landry also attested to the fact that Mr. Royal never mentioned anything about an alleged barnacle being on the stairwell until after he returned to the Pelican Shipyard premises days after his accident, when he filled out an accident report. *Id.* Although Mr. Royal refers to the deposition testimony of Landry's wife, Jessica Landry, as support for the fact that Landry told his wife that Mr. Royal told him immediately after the accident that he had slipped on a barnacle, such testimony by Jessica Landry as to what Mr. Royal told her husband is hearsay (not within her personal knowledge) and not competent evidence for purposes of summary judgment. *See*, Landry's deposition, Exhibit C to plaintiffs' opposition, R. Doc. 45-1, p. 35. In contrast, Landry's own affidavit, attesting to the timing and nature of what Mr. Royal told him about the cause of his accident, is proper evidence for consideration on summary judgment. Furthermore, although the accident report completed by Landry states that Mr. Royal told him he "lost his footing on barnacles," the report does not indicate what date it was completed; it only states the date upon which the accident occurred. *See*, Exhibit C to plaintiffs' opposition. Landry's affidavit indicates that such report was not completed until several days after the accident. Finally, Mr. Royal admitted, on page 110 of his December 2010 deposition, that the accident report "may have been [filled out] sometime later," because, after the accident, he went to River West Medical Center and then was scheduled to go to a doctor in Baton Rouge.

[8] "[C]onclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence are insufficient to defeat a summary judgment motion." *Dunn v. Prince*, 2009 WL 1024612, **1 (5th Cir. 2009); *Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

stairwell in question on the day of Mr. Royal's accident or otherwise, and as a result, they will be unable to demonstrate that the presence of barnacles on the stairwell was the cause of Mr. Royal's accident.[9] As such, they cannot establish liability on Deloach's part for any negligent acts/omissions of its employee in scraping the barnacles.

Furthermore, Deloach has produced evidence demonstrating that the actions Mr. Royal was performing at the time of the accident were a deviation from his employer's safety rules and were the more likely cause of his accident. According to the deposition testimony of Pelican Shipyard's president, Businelle, the activity Mr. Royal was performing at the time of his accident (*i.e.*, carrying a 25-30 pound pump that was 2.5' x 2.5' wide down a stairwell using both hands and without the use of the stairwell handrail) was unsafe and not in compliance with Pelican's safety standards and training. *See*, Businelle deposition, pp. 70-75; Mr. Royal's deposition, pp. 107-109. Pelican Shipyard trained its employees to use the handrail at all times when ascending and descending the portable stairwell. *Id.* Additionally, Businelle and Jessica Landry, another employee of Pelican Shipyard, testified that there was a crane on the premises that was to be used for transporting equipment, such as the pump in question, on and off the vessel,[10] and that assistance was always available to Pelican employees in transporting equipment if they needed it. *See*, Businelle deposition, pp. 28, 30, 68-69, 71, 75. Businelle testified that the portable stairwell in

---

[9] Instead, Mr. Royal admitted, during his deposition, that he does not know the true cause of his accident and that his theory concerning barnacles on the stairwell is speculative based upon the fact that barnacle-scraping had occurred in the area prior to his accident. *See*, Mr. Royal's deposition, pp. 113-114, 131-132. Although Mr. Royal stated, during his deposition, that he is "more than sure it was barnacles" upon which he slipped, he bases such statement only upon conjecture since he never actually saw a single barnacle on the stairwell (nor did anyone else).

[10] The crane had two (2) different sized attachable baskets that could be used to transfer equipment or materials on and off the dry-docked vessels on the Pelican premises.

question was to be used solely for the purpose of people boarding and disembarking vessels and not for the transfer of equipment/tools on and off of vessels. *Id.*, pp. 68-70. Mr. Royal has not presented any evidence to the contrary. Moreover, he confirmed, during his deposition, that he did not ask for any assistance in transporting the pump in question nor did he use the crane, contrary to Pelican's rules/procedures. *See*, Mr. Royal's deposition, pp. 101. Although Pelican has indicated that the subject stairwell has been used for approximately thirty (30) years and that, after such a period of wear and tear, a "dip" or bend had developed on the third step from the bottom of the stairwell that slanted downward on the edge of the step (in the general area where Mr. Royal claims to have slipped), Pelican also explains that, because Mr. Royal was carrying a pump down the stairwell, contrary to company rules/procedures, he could not see the steps below him or the "dip" in the edge of the third step and was therefore unable to avoid that "dip" or to step more carefully upon it, likely resulting in his fall. *See*, Businelle deposition, pp. 70, 75, 87-89.[11]

The plaintiffs have not produced any competent proof with their opposition refuting the evidence produced by defendants, which evidence suggests that the more likely cause of Mr. Royal's accident is the fact that he was carrying a pump down a stairwell contrary to company rules/procedures and that he slipped on a worn third step that he could not see

---

[11] Deloach has also presented a copy of the deposition transcript of Mr. Royal's physician, Dr. Luke Lee, who testified that he would "strongly recommend against anybody doing [what Mr. Royal did in carrying a 2 foot by two foot wide, 25 to 30 pound piece of equipment down a relatively steep stairwell and not holding onto the handrail] . . . particularly Mr. Royal," considering certain medical conditions that Mr. Royal had, which included chronic low back pain, ongoing problems with his cervical spine, and left leg radiculopathy and motor weakness. *See*, Deposition of Dr. Luke Lee, Exhibit G to Deloach's motion, p. 36, 43.

(nor could he brace himself on the handrails)[12] due to the pump being in his hands.[13] Considering the complete lack of evidence supporting plaintiffs' theory that barnacles left on the steps by a Deloach employee were the cause of Mr. Royal's accident and the fact that plaintiffs have not established that Deloach was in any way responsible for any other substances on (or defects in) the stairwell in question,[14] Deloach is entitled to summary judgment and dismissal from this suit with prejudice.[15]

Accordingly;

**IT IS ORDERED** that the motions for summary judgment (R. Docs. 43 and 44) filed by defendants, Ingram Barge Company, Delaware Marine Services, Inc., and Deloach Marine Services, LLC, are hereby **GRANTED**, and this matter shall be **DISMISSED WITH**

---

[12] Mr. Royal admitted, during his deposition, that he had been trained to hold onto handrails whenever ascending and descending the stairwells to vessels for safety reasons. *See*, Mr. Royal's deposition, p. 70. He also admitted that, at the time of the accident, he was holding the pump with both hands as he descended the stairwell. *Id.*, pp. 107-109.

[13] Mr. Royal's own employer testified that the accident in question was caused by Mr. Royal's own fault, in that Mr. Royal made a "wrong choice" by carrying a 2.5' x 2.5', 25-30 pound pump down a steep stairwell without using a handrail, in violation of common sense and safety standards. *See*, Businelle's deposition, p. 75, 89. Businelle specifically indicated that, if he had seen Mr. Royal carrying the pump or other equipment down the stairwell, he would have stopped him immediately. *Id.*, pp. 73-74.

[14] Mr. Royal conceded, during his deposition, that his theory concerning barnacles on the stairway was purely conjectural and that he may just as well have slipped due to a dip on the edge of the step where he fell, of which he was previously unaware. *See*, Mr. Royal's deposition, p. 132. However, since Mr. Royal has not produced any evidence establishing that Deloach is in any way responsible for maintaining the stairwell in question, Mr. Royal cannot establish liability on its part concerning any defects in the stairwell.

[15] Put another way, plaintiffs have failed to offer competent evidence, sufficient to carry their burden of proof at trial, that an employee of Deloach created an unreasonably dangerous condition that was a proximate cause of Mr. Royal's accident and injuries.

**PREJUDICE**.  Judgment will be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, March 29, 2011.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**